STATE of Minnesota, Respondent,

v.

Gerald E. HOUSTON, Appellant.

No. A04–324.

Supreme Court of Minnesota.

Aug. 18, 2005.

John Stuart, State Public Defender, Benjamin J. Butler, Assistant Public Defender, Minneapolis, MN, for Appellant.

Mike Hatch, Attorney General, Thomas R. Ragatz, Assistant Attorney General, St. Paul, MN, Kathleen A. Heaney, Sherburne County Attorney, Arden Fritz, Assistant County Attorney, Elk River, MN, for Respondent.

## OPINION

ANDERSON, G. BARRY, Justice.

On October 10, 2001, appellant Gerald E. Houston was convicted of one count of attempted first-degree controlled substance crime, Minn.Stat. §§ 152.021, subd. 2a (2000), 609.17 (2004), and one count of fifth-degree controlled substance crime, Minn.Stat. § 152.025, subd. 2(1) (2004), arising from his possession, in his motor vehicle, of several items necessary to manufacture methamphetamine. The district court sentenced Houston to 240 months in prison under the "career offender statute," Minn.Stat. § 609.1095, subd. 4 (2004).

This was a substantial upward durational departure from the presumptive guidelines sentence that the court determined was 80½ months (Houston's offense carried a severity level of VIII and Houston had a criminal history score of 7). Minn. Sent. Guidelines IV, II.G. The district court based the upward departure on a finding that (1) Houston had been convicted of at least five previous felonies, and (2) the current crime was committed as "part of a pattern of criminal behavior." Houston appealed, the court of appeals affirmed, and this court denied review. *State v. Houston*, 2002 WL 31892561 (Minn.App. Dec.31, 2002), *rev. denied* (Minn. Mar. 18, 2003).

Houston petitioned for postconviction relief challenging the length of his sentence under *Neal v. State*, 658 N.W.2d 536 (Minn.2003). The postconviction court upheld Houston's sentence against that challenge. While his appeal of the postconviction court's decision was pending, the U.S. Supreme Court decided *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). The parties briefed and argued to the court of appeals the applicability of *Blakely* to Houston's sentence. The court of appeals held that Houston could not benefit from *Blakely* because *Blakely* announced a new rule of constitutional criminal procedure, and under our retroactivity jurisprudence, a new rule does not apply once all direct appeals have been exhausted. *State v. Houston*, 689 N.W.2d 556, 559–560 (Minn.App.2004). The court of appeals also concluded that because *Blakely* was not a "watershed" rule, *Blakely* is not subject to retroactive application on collateral review. *Id.* at 560. The parties do not dispute that *Blakely* is applicable to upward durational departures under the Minnesota Sentencing Guidelines, and we granted review on the limited issue of the retroactivity of *Blakely*.

# I.

Whether *Blakely* applies retroactively to convictions final at the time *Blakely* was decided is a purely legal issue which this court reviews de novo. *See O'Meara v. State*, 679 N.W.2d 334, 338 (Minn.2004). Our jurisprudence on retroactivity, most recently set out in *O'Meara*, recognizes that the retroactivity principles of *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), control when we are faced with a federal constitutional rule of criminal procedure. *See O'Meara*, 679 N.W.2d at 339. Under *Teague*, we first ask whether the rule of federal constitutional criminal procedure is new, or whether it is merely a predictable extension of a pre-existing doctrine. *Id.* at 301, 109 S.Ct. 1060. If the rule is considered "new," it must be applied to all cases pending on direct review—cases where the availability of direct appeal has not been exhausted and the time for a petition for certiorari has not elapsed. *O'Meara*, 679 N.W.2d at 339–40. A defendant whose conviction is final but who attacks the conviction or sentence on collateral review (e.g., a petition for post-conviction relief) does not receive the benefit of a "new" rule of constitutional criminal procedure. *Id.*

*Teague*, however, lays out two exceptions to this rule. When either of these exceptions applies, the new rule of constitutional criminal procedure must be given full retroactive effect, such that it is available to all defendants similarly situated, even though the defendant is seeking collateral review. *Teague*, 489 U.S. at 311, 109 S.Ct. 1060. The first exception, not relevant here, applies whenever the new rule places certain specific conduct "beyond the power of the criminal lawmaking authority to proscribe." *See id.* The second exception, known as the "wa-

tershed rule" exception, applies when the new rule "requires the observance of those procedures that * * * are implicit in the concept of ordered liberty" or "alter our understanding of the *bedrock procedural elements* that must be found to vitiate the fairness of any particular conviction." *Id.* (emphasis in original, internal quotation marks omitted, omissions in original).

Houston argues that *Blakely* did not announce a new rule of constitutional criminal procedure because it was dictated by the Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and therefore the *Blakely* rule dates back to *Apprendi*, which was decided before his direct appeal was exhausted. In the alternative, Houston argues that, if *Blakely* did announce a "new" rule, then that rule is a "watershed" rule under the second *Teague* exception, and *Blakely* must be given full retroactive effect. We disagree with both arguments.

## II.

■ The Supreme Court held in *Teague* that a rule of constitutional criminal procedure is new if it is not "dictated" by precedent. 489 U.S. at 301, 109 S.Ct. 1060. This principle serves to "validat[e] reasonable, good-faith interpretations of existing precedents made by state courts even though they are later shown to be contrary to later decisions." *Butler v. McKellar*, 494 U.S. 407, 414, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990). This "serves to ensure that gradual developments in the law over which reasonable jurists may disagree are not later used to upset the finality of state convictions valid when entered." *Sawyer v. Smith*, 497 U.S. 227, 234, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990). The principle of finality is key, as the doctrine is aimed at blocking the formation of a "mechanism for the continuing reexamination of final judgments based upon later emerging legal doctrine." *Id.* Thus, it is not enough that a new constitutional rule of procedure is logically an extension of some precedent, as that is true of virtually all recently announced rules, but rather the test is whether "reasonable jurists hearing petitioner's claim at the time his conviction became final 'would have felt *compelled* by existing precedent' to rule in his favor." *Graham v. Collins*, 506 U.S. 461, 467, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993) (emphasis added).

In the context of the present case, *Blakely* altered the meaning of "statutory maximum" for purposes of *Apprendi*. *Apprendi* held that any fact, other than the fact of a prior conviction, that increases the penalty for an offense beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. 530 U.S. at 490, 120 S.Ct. 2348. Prior to *Blakely*, "statutory maximum" was generally thought to mean the heaviest penalty a court could impose on a defendant—the ceiling of the relevant statutory sentencing range. *See Harris v. United States*, 536 U.S. 545, 562–63, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) (concluding that a mandatory minimum sentencing statute did not raise *Apprendi* concerns because the statute did not increase the penalty for the offense above the prescribed statutory maximum). *Blakely* altered this understanding, holding that the maximum punishment for *Apprendi* purposes is the maximum sentence the judge may impose based solely upon those facts either reflected in the jury verdict or admitted by the defendant, which meant the presumptive sentence under the Washington state sentencing guidelines. *Blakely*, 542 U.S. at ——, 124 S.Ct. at 2537.

■ Although the Supreme Court did not speak directly on the retroactivity issue, *United States v. Booker* supports the "new rule" analysis. *See* 543 U.S. ——,

125 S.Ct. 738, 160 L.Ed.2d 621 (2005). In *Booker*, applying *Blakely* to the federal sentencing guidelines, the Supreme Court noted, "we must apply today's holdings— both the Sixth Amendment holding and our remedial interpretation of the Sentencing Act—to all cases on direct review." *Id.* at ——, 125 S. Ct at 769. *Booker* then applied the rule from *Griffith v. Kentucky* that a new rule in a criminal prosecution is applied "retroactively to all cases * * * pending upon direct review or not yet final." *Id.* (citing *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987)). Although the Supreme Court did not finally tie it up neatly, this language suggests that *Booker* was a new rule for *Teague* purposes. *Booker* merely applied the rule of *Blakely* in a new context—federal sentencing—and *Booker* qualified as a new rule. *Blakely* altered our prior understanding of "statutory maximum" in a much more fundamental way, applying the rule of *Apprendi* in the context of state sentencing guidelines, and is therefore also a new rule.[1]

But we need not divine the intentions of the Supreme Court. That reasonable jurists disagreed about the result reached in

---

**1.** A survey of the Supreme Court's retroactivity precedent validates our view that the principle of finality fully precludes fully retroactive application of *Blakely*. In *Sawyer*, the Supreme Court decided that the rule announced in *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985) was a new rule and thus unavailable for collateral use. *See Sawyer*, 497 U.S. at 240–41, 110 S.Ct. 2822. In *Caldwell*, the Court held that the Eighth Amendment prohibits imposition of the death penalty by a sentencing jury with a false belief that the responsibility for the imposition of a death sentence lies with the appellate court and not the jury. *Id.* at 233., 110 S.Ct. 2822 The petitioner in Sawyer argued that the principle of reliability in capital sentencing, announced in prior cases, dictated the *Caldwell* result. The Supreme Court rejected this argument and noted that although a state court had reached an incorrect conclusion, finality required its validation. *Sawyer*, 497 U.S. at 244–45, 110 S.Ct. 2822. This is, of course, the circumstance here, where state courts adopted the "wrong" definition of the maximum statutory penalty.

Similarly, in *Graham v. Collins*, the Supreme Court held that petitioner's claim—that jury instructions limiting the Texas capital sentencing jury to the consideration of three special issues prevented the jury from adequately assessing other mitigating evidence— required the announcement of a new rule and thus was barred by *Teague*. 506 U.S. at 464, 477–78, 113 S.Ct. 892. Notably, *Graham* demonstrates that the *Teague* finality principle applies to bar relief even in those cases where fundamental fairness is most important— death penalty cases.

Finally, in *Schriro v. Summerlin*, 542 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004), the Supreme Court held that the procedural rule set out in *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), was a new rule, but not a watershed new rule. 542 U.S. at ——, 124 S.Ct. at 2526. In *Ring*, the Court applied *Apprendi* to the Arizona death penalty scheme. 536 U.S. at 609, 122 S.Ct. 2428. Houston argues that *Ring* is a new rule because it overruled *Walton v. Arizona*, but a careful reading of the *Summerlin* text suggests otherwise. *See Walton v. Arizona*, 497 U.S. 639, 646–49, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990) (holding that the Arizona capital sentencing scheme, which allowed the court and not the jury to make factual findings underlying a capital sentencing decision, did not offend the Sixth Amendment). Justice Scalia, writing for the majority, stated:

> The right to jury trial is fundamental to our system of criminal procedure, and States are bound to enforce the Sixth Amendment's guarantees as we interpret them. But it does not follow that, when a criminal defendant has had a full trial and one round of appeals in which the State faithfully applied the Constitution as we understood it at the time, he may nevertheless continue to litigate his claims indefinitely in hopes that we will one day have a change of heart. *Ring* announced a new procedural rule that does not apply *retroactively* to cases already final on direct review.

*Summerlin*, 542 U.S. at ——, 124 S.Ct. at 2526. It is notable that *Summerlin* and *Ring* also dealt with death penalty issues.

*Blakely* is clear: the decision was issued by a closely divided five to four court. Further, as Justice O'Connor noted in her *Blakely* dissent, prior to *Blakely*, only one court had previously reversed an upward departure from a guidelines sentence. 542 U.S. at —— n. 1, 124 S.Ct. at 2547 n. 1 (O'Connor, J., dissenting); *see State v. Gould*, 271 Kan. 394, 23 P.3d 801, 814 (2001). We have previously held that the maximum sentence authorized by the jury's verdict was the maximum penalty allowable by the statute defining the offense, a position now invalidated by *Blakely*.[2] *See State v. Grossman*, 636 N.W.2d 545, 549 (Minn.2001). It is no overstatement to observe that few saw *Blakely* on the horizon.

Because reasonable jurists, including this court, disagreed over the import of *Apprendi* for sentencing guidelines, extending the benefit of the *Blakely* rule beyond those cases pending on direct review at the time of the announcement of the rule would undermine the retroactivity policy of validating good-faith state court decisions and preserving finality. Thus, *Blakely* is a new rule of constitutional criminal procedure unavailable for collateral use.

### III.

 While *Blakely* is a new rule of federal constitutional criminal procedure, it is not a "watershed" new rule requiring full retroactivity. Under *Teague*, a new rule must be retroactively applied as a "watershed" rule if it "requires the observance of those procedures that * * * are implicit in the concept of ordered liberty." 489 U.S. at 311, 109 S.Ct. 1060 (internal quotation marks omitted). This category is reserved for watershed rules of criminal

procedure that "alter our understanding of the *bedrock procedural elements* that must be found to vitiate the fairness of a particular conviction." *Id.* (emphasis in original). To be a watershed rule, the new rule must be one without which "the likelihood of an accurate conviction is seriously diminished." *Id.* at 313, 109 S.Ct. 1060. A rule is not a watershed rule simply because it improves the accuracy of proceedings, but rather the rule must also be essential to fundamental fairness of a proceeding. *Sawyer*, 497 U.S. at 242, 110 S.Ct. 2822. Rules qualifying under the second *Teague* exception as "watershed" rules are extremely rare. *Tyler v. Cain*, 533 U.S. 656, 667 n. 6, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001); *see also Meemken v. State*, 662 N.W.2d 146, 149 (Minn.App. 2003).

 While the right to jury trial implicated by *Blakely* is fundamental to our system of criminal procedure, *see Summerlin*, 542 U.S. at ——, 124 S.Ct. at 2525–26, *Blakely* does not impact the accuracy of an underlying determination of guilt or innocence. Instead, it modifies the manner in which certain factors—those factors justifying upward durational departures in states which use determinate sentencing guidelines—must be treated. In *Summerlin*, deciding that *Ring* did not fall under the *Teague* watershed rule exception, the United States Supreme Court reasoned that there was no evidence that "judicial fact-finding so '*seriously* diminishe[s]' accuracy that there is an 'impermissibly large risk' of punishing conduct the law does not reach" is created. *Summerlin*, 542 U.S. 348, 124 S.Ct. at 2525 (emphasis in original, citations omitted). In this regard, the remedy applied when we find a *Blakely* violation gives a further

---

**2.** *Grossman* and other cases reflecting our understanding of *Apprendi* before *Blakely* was decided are discussed in *State v. Shattuck*,

704 N.W.2d 131, 135–36 (Minn. 2005) filed herewith.

clue as to the nature of the rule. A *Blakely* violation requires remand for resentencing, and not a new trial or vacation of a conviction. We are hard-pressed to see how a rule that, when violated, merely requires re-sentencing can be said to be one "without which the likelihood of an accurate conviction is seriously diminished." *Teague,* 489 U.S. at 313, 109 S.Ct. 1060.

Houston further argues that the *Apprendi* line of cases requires that all sentencing factors, which increase the penalty for an offense beyond the ceiling of punishment available based solely on the jury's verdict or guilty plea, be treated as elements of the underlying offense. *See Apprendi,* 530 U.S. at 494 n. 19, 120 S.Ct. 2348. Houston claims that because elements of an offense must be placed in the charging instrument, submitted to a jury, and found beyond a reasonable doubt, treating sentencing factors as elements implicates "bedrock procedural elements" regarding accuracy. *See Teague,* 489 U.S. at 311, 109 S.Ct. 1060. But the Supreme Court has not explicitly addressed this issue, let alone as appellant suggests, and we decline to address the issue here.

We therefore hold that, while *Blakely* is a new rule, it is not a watershed new rule of constitutional criminal procedure. The decision of the court of appeals is affirmed.

Affirmed.