[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 453 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 454 
 Syllabus by the Court
1. As stated in 
State v. Houston,
 
702 N.W.2d 268
, 
270
(Minn. 2005), this court applies the framework of 
Teague v.
Lane,
 
489 U.S. 288
 (1989), when determining the extent of retroactive application of a decision of the United States Supreme Court announcing a rule of federal constitutional criminal procedure.
2. 
Crawford v. Washington,
 
541 U.S. 36
 (2004), established a new rule of federal constitutional criminal procedure that is not within either exception to the general rule of
Teague.
 Consequently, appellant, whose case was final at the time 
Crawford
 was decided, is not entitled to have
Crawford
 applied retroactively to his case.
 OPINION
Stephen Danforth was convicted of first-degree criminal sexual conduct, Minn.Stat. § 609.342, subd. 1(a) (2004), on March 6, 1996. This conviction arose out of the sexual abuse of J.S., a 6-year-old boy. J.S. was found incompetent to testify at trial, but a videotaped interview of J.S. conducted at a non-profit center was admitted into evidence. On appeal, the court of appeals affirmed Danforth's conviction but remanded for resentencing. State v. Danforth, 573 N.W.2d 369, 371 (Minn.App. 1997) (Danforth I), rev. denied (Minn. Feb. 19, 1998).[1] On remand, Danforth was sentenced to imprisonment for 316 months. The court of appeals affirmed this sentence on appeal. State v. Danforth, No. C5-98-2054, 1999 WL 262143, at *1 (Minn.App. May 4, 1999) (Danforth II), rev. denied
(Minn. July 28, 1999). Alleging various trial errors, Danforth filed a petition for postconviction relief. The postconviction court denied the petition and the court of appeals affirmed. Danforthv. State, *Page 455 
No. C6-00-699, 2000 WL 1780244, at *1 (Minn.App. Dec. 5, 2000) (Danforth III), rev. denied (Minn. Feb. 13, 2001).
After the Supreme Court's decisions in Crawford v.Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531,159 L.Ed.2d 403 (2004), Danforth filed a second petition for postconviction relief alleging he was entitled to relief based on the rules established by those cases. The postconviction court denied Danforth relief, finding that neither Crawford norBlakely applied retroactively to Danforth's case; the court of appeals affirmed. Danforth v. State, 700 N.W.2d 530, 532
(Minn.App. 2005) (Danforth IV). We granted review of theCrawford issue only and requested that the Office of the State Public Defender represent Danforth on this appeal.
Danforth argues that this court is free to apply a broader retroactivity standard than that of Teague v. Lane,489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and that he is entitled to the benefit of Crawford under state retroactivity principles. He also argues that, even using the framework ofTeague, Crawford should be retroactively applied to his case. We reaffirm our holding in State v. Houston, 702 N.W.2d 268,270 (Minn. 2005), that we are required to apply Teague's principles when analyzing the retroactivity of a rule of federal constitutional criminal procedure. Because we conclude that, under Teague, Crawford does not apply retroactively to Danforth's case, we affirm.
 I.
We recently held that the retroactivity principles of Teague
control when determining the retroactive effect of a federal constitutional rule of criminal procedure.[2] Houston,702 N.W.2d at 270. Under Teague, a new rule is usually not retroactively applicable to a defendant's case once the defendant's case has become final. Teague, 489 U.S. at 310,109 S.Ct. 1060 (plurality opinion).[3] It is undisputed that Danforth's case was final before Crawford was decided.[4]
For the first time in his brief to this court, Danforth argues that this court is free to apply a broader retroactivity standard than that in Teague and that he is entitled to the benefit ofCrawford under state retroactivity principles. We choose to address this issue in the interests of justice.
We have stated that, when dealing with a new rule of federal constitutional criminal procedure, we are "compelled to follow *Page 456 
the lead of the Supreme Court in determining when a decision is to be afforded retroactive treatment." O'Meara v. State,679 N.W.2d 334, 339 (Minn. 2004). This conclusion is based onAmerican Trucking Associations, Inc. v. Smith, in which a plurality of the Supreme Court stated that the retroactive effect of its federal constitutional decisions is a question of federal law and that the Court has "consistently required that state courts adhere to [the Court's] retroactivity decisions."496 U.S. 167, 177-78, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990) (plurality opinion); see also Ashland Oil, Inc. v. Caryl, 497 U.S. 916,918, 110 S.Ct. 3202, 111 L.Ed.2d 734 (1990). In Houston, we applied O'Meara's principles to hold that we must follow theTeague framework when determining whether a postconviction petitioner is entitled to have a new rule of federal constitutional criminal procedure applied retroactively to his or her case. Houston, 702 N.W.2d at 270. Minnesota is not the only state to have determined that a Teague analysis is required when determining whether a new rule of federal constitutional criminal procedure can be applied retroactively to cases on state postconviction review. See Page v. Palmateer, 336 Or. 379,84 P.3d 133, 134-38 (2004).
Danforth argues that Teague dictates the limits of retroactive application of new rules only in federal habeas corpus proceedings and does not limit the retroactive application of new rules in state postconviction proceedings. Danforth is incorrect when he asserts that state courts are free to give a Supreme Court decision of federal constitutional criminal procedure broader retroactive application than that given by the Supreme Court. In American Trucking Associations, the plurality rested its retroactivity analysis in part on Michigan v. Payne,412 U.S. 47, 93 S.Ct. 1966, 36 L.Ed.2d 736 (1973). Am. TruckingAss'ns, Inc., 496 U.S. at 178, 110 S.Ct. 2323. In Payne, the Court reversed the decision of the Michigan Supreme Court, which had applied North Carolina v. Pearce, 395 U.S. 711,89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), retroactively to Payne's case, and held that Pearce would not apply to errors occurring beforePearce was decided. Payne, 412 U.S. at 49, 57, 93 S.Ct. 1966.
In light of Payne and American Trucking Associations, we cannot apply state retroactivity principles when determining the retroactivity of a new rule of federal constitutional criminal procedure if the Supreme Court has already provided relevant federal principles. While the Supreme Court has not explicitly addressed retroactivity principles in state postconviction proceedings, the Court has drawn a line between cases that are "pending on direct review," and cases that are "final." SeeSchriro v. Summerlin, 542 U.S. 348, 351, 124 S.Ct. 2519,159 L.Ed.2d 442 (2004) ("When a decision of this Court results in a `new rule,' that rule applies to all criminal cases stillpending on direct review. As to convictions that are alreadyfinal, however, the rule applies only in limited circumstances." (citation omitted) (emphasis added)). Once a case is "final," a new rule of federal constitutional criminal procedure can be retroactively applied to the case only if retroactive application is warranted under the Teague framework. Schriro,542 U.S. at 351-52, 124 S.Ct. 2519. The Court, therefore, has created a retroactivity framework with only two procedural categories of cases: (1) those on direct review and (2) those that are final. Since we have already concluded that a petition for postconviction relief does not constitute "direct review," seeHouston, 702 N.W.2d at 270, and it is undisputed that Danforth's case was final at the time of the Crawford decision, we must apply Teague when determining *Page 457 
whether Crawford can be retroactively applied to Danforth's case.
We are aware that other states have declined to apply Teague
or have emphasized that they apply Teague as a matter of choice when determining the retroactivity of new rules of federal constitutional criminal procedure in state postconviction proceedings. See Daniels v. State, 561 N.E.2d 487, 489 (Ind. 1990); State ex rel. Taylor v. Whitley, 606 So.2d 1292, 1296-97
(La. 1992); State v. Whitfield, 107 S.W.3d 253, 266-68 (Mo. 2003); Colwell v. State, 118 Nev. 807, 59 P.3d 463, 470-71
(2002); Cowell v. Leapley, 458 N.W.2d 514, 517-18 (S.D. 1990). The principal rationales given in these decisions are: (1) a state may give a new rule of federal constitutional criminal procedure greater retroactive effect than that given by the Supreme Court and (2) state postconviction proceedings involve different interests than federal habeas proceedings. SeeWhitfield, 107 S.W.3d at 267-68; Colwell, 59 P.3d at 470-71;Cowell, 458 N.W.2d at 517-18. Teague's framework is based, in part, on concerns unique to federal habeas corpus decisions. SeeTeague, 489 U.S. at 308, 109 S.Ct. 1060 ("[W]e have recognized that interests of comity and finality must also be considered in determining the proper scope of habeas review." (emphasis added)). Notwithstanding these different policy concerns, in light of Payne, American Trucking Associations, and the dichotomy drawn by Teague between cases on "direct review" and "final" cases, we reaffirm our decision in Houston and conclude that we are not free to fashion our own standard of retroactivity for Crawford. Therefore, the retroactivity of Crawford to Danforth's case must be analyzed under Teague.
 II.
Danforth argues that, even using a Teague analysis,Crawford applies retroactively to his case because: (1)Crawford did not announce a "new" rule and, alternatively, (2)Crawford established a "watershed rule" of criminal procedure and therefore is fully retroactive under an exception toTeague's general rule. Whether Crawford applies retroactively to cases final at the time Crawford was decided is a purely legal issue reviewed de novo. See Houston, 702 N.W.2d at 270. We address each of Danforth's arguments in turn.
 A.
Under Teague, we inquire "whether the rule of federal constitutional criminal procedure is new, or whether it is merely a predictable extension of a pre-existing doctrine." Houston,702 N.W.2d at 270. If the rule is "new," it generally will not be applicable to cases that became final before the rule was announced. Teague, 489 U.S. at 310, 109 S.Ct. 1060. Danforth argues that Crawford did not announce a new rule of constitutional procedure but that Crawford's decision was "dictated by precedent dating back to the 1800s." The state, citing the decisions of several federal circuit courts on this issue, argues that holding that Crawford established a new rule is the better-reasoned position.
Crawford's "holding constitutes a `new rule' within the meaning of Teague if it `breaks new ground,' `imposes a new obligation on the States or the Federal Government,' or was not `dictated by precedent existing at the time the defendant's conviction became final.'" See Graham v. Collins, 506 U.S. 461,467, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993) quoting Teague,489 U.S. at 301, 109 S.Ct. 1060. Teague's limit on the retroactivity of new rules of constitutional procedure "validates reasonable, good-faith interpretations of existing precedents made by state courts even though they are shown to be contrary to *Page 458 
later decisions." Butler v. McKellar, 494 U.S. 407, 414,110 S.Ct. 1212, 108 L.Ed.2d 347 (1990). As we have stated, the test to determine whether a rule of procedure is "new" for Teague
purposes is not whether the rule "is logically an extension of some precedent," but rather "whether `reasonable jurists hearing petitioner's claim at the time his conviction became final would have felt compelled by existing precedent to rule in his favor.'" Houston, 702 N.W.2d at 271 (quoting Graham,506 U.S. at 467, 113 S.Ct. 892 (emphasis added) (internal quotation omitted)). This test is meant "to ensure that gradual developments in the law over which reasonable jurists may disagree are not later used to upset the finality of state convictions valid when entered." Sawyer v. Smith, 497 U.S. 227,234, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990).
Applying these principles to this case, we examine the changeCrawford worked on the legal landscape. As we have stated, prior to Crawford, the admissibility of an out-of-court statement under the Confrontation Clause was guided by Ohio v.Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980),abrogated by Crawford, 541 U.S. 36, 124 S.Ct. 1354,158 L.Ed.2d 177. See State v. Bobadilla, 709 N.W.2d 243, 248 (Minn. 2006). Under Roberts, a hearsay statement could be admitted without violating a defendant's rights under the Confrontation Clause if: (1) the declarant was unavailable at trial and (2) the statement bore "adequate `indicia of reliability.'" 448 U.S. at 66,100 S.Ct. 2531. Sufficient reliability was inferred when the evidence fell "within a firmly rooted hearsay exception." Id. If the evidence did not fall within such an exception, it was only admissible upon "a showing of particularized guarantees of trustworthiness." Id.
Crawford "significantly altered the rules governing the admissibility of testimonial out-of-court statements against criminal defendants at trial." Wright, 701 N.W.2d at 808. Stating that the Roberts test had a "demonstrated capacity" to admit statements in contravention of the Confrontation Clause, the Supreme Court held that "testimonial" evidence is inadmissible unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. SeeCrawford, 541 U.S. at 53-54, 63, 68, 124 S.Ct. 1354. The Court declined to provide a complete definition of "testimonial," but stated that the term covered, "at a minimum, * * * prior testimony at a preliminary hearing, before a grand jury, or at a former trial[,] and * * * police interrogations." Id. at 68,124 S.Ct. 1354.
The rule in Crawford, therefore, was not compelled byRoberts — Crawford replaced the more flexible reliability inquiry of Roberts with a bright-line rule for a certain class of hearsay statements. Nonetheless, Danforth argues thatCrawford did not announce a new rule because "the Supreme Court has always held that testimonial statements made without cross-examination were inadmissible under the Confrontation Clause." This argument rests on the fact that Crawford based its rule on the "Framers' understanding" of the Confrontation Clause, see 541 U.S. at 59, 68, 124 S.Ct. 1354, and the Court's statement that "the results of our [prior] decisions have generally been faithful to the original meaning of the Confrontation Clause," id. at 60, 124 S.Ct. 1354.
Danforth's argument is flawed because it misconstrues the test governing whether a rule is new for Teague purposes. We do not ask whether Crawford's rule is faithful to the original meaning of the Confrontation Clause or whether the results of relevant Supreme Court precedent are consistent with the rule inCrawford. Instead, we ask "whether `reasonable jurists hearing petitioner's claim at *Page 459 
the time his conviction became final would have felt compelled
by existing precedent to rule in his favor.'" Houston,702 N.W.2d at 271 (quoting Graham, 506 U.S. at 467, 113 S.Ct. 892
(emphasis added) (internal quotation omitted)). As noted earlier, prior to Crawford, Roberts guided a court's inquiry concerning whether the admission of an out-of-court statement violated the Confrontation Clause. Bobadilla, 709 N.W.2d at 248; see alsoState v. King, 622 N.W.2d 800, 807 (Minn. 2001). Put another way, Danforth's argument requires "reasonable jurists" to have foreseen Crawford's significant modification — if not outright overruling — of Roberts.[5] When conducting an analysis under Teague, the Supreme Court has never required such prescience of lower courts. Furthermore, such a requirement would not "validate reasonable, good-faith interpretations of existing precedents made by state courts even though they are shown to be contrary to later decisions." Butler,494 U.S. at 414, 110 S.Ct. 1212. Consequently, Crawford established a new rule of federal constitutional criminal procedure for the purposes of Teague.[6]
 B.
There are two exceptions to Teague's general rule that new rules of federal constitutional criminal procedure are not retroactively applicable to cases that were final when that new rule was announced. Teague, 489 U.S. at 311, 109 S.Ct. 1060. The first exception establishes that Teague's "bar does not apply to rules forbidding punishment `of certain primary conduct [or to] rules prohibiting a certain category of punishment for a class of defendants because of their status or offense.'" Beardv. Banks, 542 U.S. 406, 416, 124 S.Ct. 2504, 159 L.Ed.2d 494
(2004) (quoting Penry v. Lynaugh, 492 U.S. 302, 330,109 S.Ct. 2934, 106 L.Ed.2d 256 (1989)). The second exception, which is "known as the `watershed rule' exception, applies when the new rule `requires the observance of those procedures that * * * are implicit in the concept of ordered liberty' or `alter our understanding of the bedrock procedural elements that must be found to vitiate the fairness of any particular conviction.'"Houston, 702 N.W.2d at 270-71 (quoting Teague,489 U.S. at 311, 109 S.Ct. 1060). Danforth argues that, if Crawford
established a new rule for Teague purposes, the rule is a "watershed rule" within Teague's second exception. The state argues, and the court of appeals held, that the rule established by Crawford does *Page 460 
not fall within this narrow exception. Danforth IV,700 N.W.2d at 531-32.
Since the Supreme Court adopted the Teague framework, it has yet to find a new rule of federal constitutional criminal procedure that qualifies as a "watershed rule." Such a rule "must be one without which `the likelihood of an accurate conviction is seriously diminished.'" Houston, 702 N.W.2d at 273 (quotingTeague, 489 U.S. at 313, 109 S.Ct. 1060). A watershed rule must do more than simply improve the accuracy of a proceeding; it must be "essential to fundamental fairness of a proceeding." Id. The only rule that the Supreme Court has stated would fall within this exception is the right to trial counsel established byGideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799
(1963). Beard, 542 U.S. at 417, 124 S.Ct. 2504. These rules are extremely rare, and the Supreme Court recently stated that it is unlikely any watershed rules have yet to be announced. Schriro,542 U.S. at 352, 124 S.Ct. 2519.
The rule announced in Crawford cannot meet the stringent requirements of this exception. First, Crawford imposed a bright line rule of exclusion for a certain class of hearsay statements based on the original intent of the Confrontation Clause. See 541 U.S. at 59, 68, 124 S.Ct. 1354. Even when dealing with a fundamental right, the appropriate inquiry underTeague is not whether the new rule reflects the framers' intent, but whether jurisprudence under the "old rule" seriously diminished the accuracy of a criminal proceeding. See Schriro,542 U.S. at 355-56, 124 S.Ct. 2519. Given that, prior toCrawford, Confrontation Clause jurisprudence focused on the reliability of out-of-court statements, see Roberts,448 U.S. at 66, 100 S.Ct. 2531, the likelihood of obtaining an accurate conviction is not seriously diminished in the absence of the rule established by Crawford. Indeed, the Supreme Court has indicated that some new rules of criminal procedure, though constitutionally based, may actually decrease the likelihood of an accurate determination of guilt or innocence. See Butler,494 U.S. at 411, 416, 110 S.Ct. 1212 (stating that a violation
of the procedural rule in Arizona v. Roberson, 486 U.S. 675,108 S.Ct. 2093, 100 L.Ed.2d 704 (1988), may increase the likelihood of an accurate determination of guilt or innocence). The same argument could be made here, for while in some cases aCrawford violation would decrease the likelihood of an accurate determination of guilt or innocence (i.e., admitting an unreliable statement), in other cases statements admissible under the Roberts test but excluded under the Crawford test would be highly reliable and helpful to the jury's determination. While the additional protections of Crawford effectuate the original meaning of the Sixth Amendment, the absence of Crawford's bright line rule would not "seriously diminish the likelihood of obtaining an accurate determination" of innocence or guilt. SeeButler, 494 U.S. at 416, 110 S.Ct. 1212.
Similarly, the Supreme Court has also looked at pre-existing protections for defendants when examining whether a new procedural rule is an "`absolute prerequisite to fundamental fairness'" as required by Teague's second exception. SeeSawyer, 497 U.S. at 243-44, 110 S.Ct. 2822 (quoting Teague,489 U.S. at 314, 109 S.Ct. 1060). Given the pre-existing Confrontation Clause protections for defendants under Roberts,Crawford's rule is not "essential to the fundamental fairness of a proceeding." Houston, 702 N.W.2d at 273.
For all of the above reasons, the rule established byCrawford does not qualify as a "watershed rule" for the purposes of *Page 461 Teague's second exception.[7] Therefore, Crawford
established a new rule of federal constitutional criminal procedure that is not within one of Teague's exceptions and, given that Danforth's case was final at the time of theCrawford decision, Danforth cannot receive the retroactive application of Crawford to his case.
Affirmed.
[1] Danforth I provides a full statement of the facts of this case. See 573 N.W.2d at 371-72.
[2] The parties do not dispute that the rule in Crawford is one of federal constitutional procedure, and Crawford states as much. See 541 U.S. at 67, 124 S.Ct. 1354 ("The Constitution prescribes a procedure for determining the reliability of testimony in criminal trials, and we, no less than the state courts, lack authority to replace it with one of our own devising.").
[3] While Teague's retroactivity analysis originally received only a plurality, it soon became the majority approach and continues to be cited by the Supreme Court. See Penry v.Lynaugh, 492 U.S. 302, 313, 109 S.Ct. 2934, 106 L.Ed.2d 256
(1989) (adopting Teague analysis as majority approach),overruled on other grounds by Atkins v. Virginia, 536 U.S. 304,122 S.Ct. 2242, 153 L.Ed.2d 335 (2002); see also Beard v.Banks, 542 U.S. 406, 408, 124 S.Ct. 2504, 159 L.Ed.2d 494 (2004) (applying Teague).
[4] "A case is final when a `judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari [has] elapsed or a petition for certiorari [has been filed and] finally denied.'" O'Meara v.State, 679 N.W.2d 334, 339 (Minn. 2004) (alterations in the original) (quoting Griffith v. Kentucky, 479 U.S. 314, 321
n. 6, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987)).
[5] Danforth does not provide any examples of such "reasonable jurists." Crawford cited numerous lower court decisions (including the decisions of four federal circuits) which had recently applied Roberts to admit "plainly testimonial statements despite the absence of any opportunity to cross-examine." See Crawford, 541 U.S. at 64-65,124 S.Ct. 1354.
[6] As noted by the state and court of appeals, this conclusion is in accordance with that of most federal circuits that have addressed this issue. Of the six circuits that have clearly addressed this issue, five have unquestionably held thatCrawford established a new rule. See Espy v. Massac,443 F.3d 1362, 1366 (11th Cir. 2006); Lave v. Dretke, 444 F.3d 333, 335
(5th Cir. 2006), petition for cert. filed, U.S.L.W. (U.S. June 13, 2005) (No. 05-11552); Bintz v. Bertrand, 403 F.3d 859,865-67 (7th Cir. 2005), cert. denied, ___ U.S. ___,126 S.Ct. 174, 163 L.Ed.2d 200 (2005); Dorchy v. Jones, 398 F.3d 783, 788
(6th Cir. 2005); Brown v. Uphoff, 381 F.3d 1219, 1226 (10th Cir. 2004), cert. denied, 543 U.S. 1079, 125 S.Ct. 940,160 L.Ed.2d 822 (2005). Even the Ninth Circuit, the only circuit thus far to hold that Crawford applies retroactively under Teague,
held Crawford to be retroactive on the basis of one of the exceptions to Teague's general rule. See Bockting v. Bayer,399 F.3d 1010, 1016, 1021 (9th Cir. 2005), opinion amended ondenial of panel reh'g, 408 F.3d 1127 (9th Cir. 2005), cert.granted sub nom. Whorton v. Bockting, ___ U.S. ___,126 S.Ct. 2017, 164 L.Ed.2d 778 (2006).
[7] Again, this is in accordance with the conclusion reached by most federal circuits that have addressed this issue. See Espy,443 F.3d at 1367; Lave, 444 F.3d at 336; Bintz,403 F.3d at 867; Dorchy, 398 F.3d at 788; Mungo v. Duncan, 393 F.3d 327,335-36 (2d Cir. 2004), cert. denied, 544 U.S. 1002,125 S.Ct. 1936, 161 L.Ed.2d 778 (2005); Brown, 381 F.3d at 1226-27. Only one circuit has held otherwise. See Bockting,399 F.3d at 1021.