STATE of Minnesota, Respondent,

v.

Edgar Randolph HUGHES,
Jr., Appellant.

No. A07–37.

Supreme Court of Minnesota.

Dec. 18, 2008.

Lawrence Hammerling, Chief State Appellate Public Defender, Michael W. Kunkel, Assistant State Public Defender, St. Paul, MN, for appellant.

Lori Swanson, Attorney General, St. Paul, Minnesota; and James C. Backstrom, Dakota County Attorney, Amy A. Schaffer, Assistant Dakota County Attorney, Hastings, MN, for respondent.

## OPINION

DIETZEN, Justice.

Appellant Edgar Randolph Hughes, Jr., pleaded guilty to aggravated robbery and was sentenced to 240 months, which was an upward departure from the presumptive sentence; he was also ordered to pay restitution, the amount of which was determined by Community Corrections, subject to Hughes's right to a hearing. Between the date Hughes received his executed sentence and the date the amount of restitution was determined, the United States

Supreme Court decided *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Hughes then petitioned for postconviction relief arguing that his conviction was not final until the amount of restitution was determined and, therefore, he was entitled to the benefit of *Blakely.* The district court agreed and granted the petition, and the court of appeals reversed. *State v. Hughes,* 742 N.W.2d 460 (Minn.App.2007). We affirm the court of appeals' decision.

Following an investigation by law enforcement of three separate armed robberies of business enterprises in West St. Paul in 2003, Hughes was charged with three counts of aggravated robbery in the first degree under Minn.Stat. § 609.245, subd. 1 (2006). Hughes agreed to plead guilty to one count and to an executed sentence of 240 months under the dangerous offender statute, Minn.Stat. § 609.1095, subd. 2 (2006), which was an upward durational departure from the presumptive sentence of 108 months based on his criminal history score. In exchange, the State agreed to dismiss the remaining two counts alleged in the complaint.

On March 19, 2004, Hughes entered a plea of guilty to count one relating to the June 26, 2003, robbery of a Payless Shoe Store, and the State dismissed the remaining two counts in the complaint. Hughes provided a factual basis for his plea and waived a presentence investigation. The district court accepted his guilty plea and sentenced him to 240 months, based on the court's finding that Hughes was a "dangerous offender" because of his prior offense history. The court also stated at the sentencing hearing that "if there is any restitution, it may be determined by Community Corrections, and you have a right to a hearing on that matter." The sentencing order confirmed that Hughes pay restitution as determined by Community Correc-

tions. The district court filed a separate order on June 22, 2004, determining that the amount of restitution was $634.99 and ordering that restitution be entered as a civil judgment.

In August 2006, Hughes filed a petition for postconviction relief seeking review of his sentence, arguing that he was entitled to the benefit of *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), because his case was pending on direct review on June 24, 2004, the date *Blakely* was decided. The postconviction court filed its order in November 2006, granting Hughes's petition for postconviction relief and ordering a further hearing on the question of the appropriate remedy. The State appealed.

The court of appeals reversed the postconviction court, holding that the conviction became final for purposes of applying *Blakely* retroactivity when the district court entered a final judgment of conviction and sentence of incarceration on March 19, 2004, even though the specific amount of restitution was not determined until a later date. *State v. Hughes,* 742 N.W.2d 460, 464 (Minn.App.2007). Hughes petitioned our court for review, which we granted. On appeal, Hughes raises three issues.

I.

■ Hughes argues that his conviction of aggravated robbery was not final until the amount of restitution was determined on June 22, 2004. Since *Blakely* was decided on June 24, 2004, Hughes contends that his case was pending on direct review and, therefore, he was entitled to the benefit of *Blakely.* He contends that under the rule announced in *Blakely* his sentence must be reduced to the presumptive sentence. Whether *Blakely* applies retroactively to a particular case is a purely legal question, which we review de novo. *State*

*v. Houston,* 702 N.W.2d 268, 270 (Minn. 2005).

In *Apprendi v. New Jersey,* the United States Supreme Court held that any fact, other than the fact of a prior conviction, that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Then in *Blakely,* the Court held that Blakely's sentence violated his Sixth Amendment right to a jury trial and, therefore, was invalid. *Blakely,* 542 U.S. at 305, 124 S.Ct. 2531. In doing so, the Court concluded that the maximum punishment under *Apprendi* is the maximum sentence the judge may impose based solely upon those facts either reflected in the jury verdict or admitted by the defendant, which for Blakely meant the presumptive sentence under Washington state sentencing guidelines. *Id.* at 303, 120 S.Ct. 2348. In *State v. Shattuck,* pursuant to *Blakely,* we held that the presumptive sentence prescribed by the Minnesota Sentencing Guidelines is the "maximum sentence a judge may impose solely on the basis of [the] facts reflected in the jury verdict or admitted by the defendant." 704 N.W.2d 131, 142–43 (Minn.2005) (quoting *Blakely,* 542 U.S. at 303, 124 S.Ct. 2531).

In *Houston,* we concluded that *Blakely* announced a new rule of federal constitutional criminal procedure and that new rules of federal constitutional criminal procedure apply to cases pending on direct review or not yet final but not to cases on collateral review such as a petition for postconviction relief. *Houston,* 702 N.W.2d at 270–73. A case is "pending on direct review" until such time as the availability of appeal has been exhausted, the time for a petition for certiorari to the U.S. Supreme Court has elapsed, or a petition for certiorari has been filed and finally denied. *Griffith v. Kentucky,* 479 U.S. 314, 321 n. 6, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987); *O'Meara v. State,* 679 N.W.2d 334, 339 (Minn.2004). But if a defendant does not file a direct appeal, his conviction is "final" for retroactivity purposes when the time to file a direct appeal has expired. *O'Meara,* 679 N.W.2d at 340. Because Hughes did not file a direct appeal, we must examine our rules of criminal procedure to determine whether the time for direct appeal in Hughes's case had expired at the time of the *Blakely* decision.

The 90–day appeal period for direct appeals begins to run upon entry of a "final" judgment, which occurs "when there is a judgment of conviction ... and [a] sentence is imposed or the imposition of [a] sentence is stayed." Minn. R.Crim. P. 28.02, subd. 2(1). Similarly, a direct appeal of a sentence imposed or stayed in a felony case is also available for 90 days following "judgment and sentencing." *See* Minn. R.Crim. P. 28.02, subd. 2(3); Minn. R.Crim. P. 28.05, subd. 1(1).

Hughes does not dispute that on March 19, 2004, the district court entered a judgment of conviction and sentenced him to 240 months in prison as well as restitution in an amount to be determined by Community Corrections, but he argues that the "sentence" was not "imposed" under Minn. R.Crim. P. 28.02 until the amount of restitution was determined in precise terms as required by Minn. R.Crim. P. 27.03, subd. 4(A). Specifically, he contends that his conviction was not accompanied by an imposed sentence until the amount of restitution was determined and, therefore, the time to file a direct appeal did not begin to run until June 22, 2004.

Hughes correctly points out that Rule 27.03 requires that "when sentence is imposed the court ... shall state the precise terms of the sentence." Minn. R.Crim. P. 27.03, subd. 4(A). But the

rule does not indicate that a sentence is imposed only when all terms are stated precisely; instead, it provides that a defendant has a right to have his imposed sentence stated in "precise terms." In short, Rule 27.03, subd. 4(A) controls the character, not the timing, of sentence imposition. Therefore, we reject Hughes's argument. We conclude that Hughes's sentence was imposed on March 19, 2004, when his sentence of incarceration and general restitution obligation was announced, and that his time for direct appeal expired 90 days later on June 17, 2004.[1] Consequently, his case was not pending on direct review at the time *Blakely* was decided.

Finally, Hughes contends that this case presents our court with the opportunity to address an issue left open in *State v. Losh*, 721 N.W.2d 886 (Minn.2006). In *Losh*, we considered, among other things, whether a sentencing appeal pursuant to *State v. Fields*, 416 N.W.2d 734 (Minn.1987), constitutes a direct appeal for the purpose of retroactivity analysis. Losh argued that, for the purpose of determining *Blakely* retroactivity, it is the sentence, and not the conviction, that must be final, and that direct review of her sentence was not final when *Blakely* was decided. *Losh*, 721 N.W.2d at 894. We affirmed the lower court's holding that the *Fields* appeal procedure followed by Losh did not qualify as direct review of her sentence for the pur-

pose of retroactivity analysis.[2] *Id.* But we declined to reach the questions of "whether 'finality of the sentence' (as opposed to 'finality of the conviction') is ever the touchstone for determining retroactive effect." *Id.*

In this case, Hughes's conviction was entered, and his sentence was imposed within the meaning of Rule 28.02 on March 19, 2004; therefore, his time to appeal both conviction and sentence began to run on that date and expired 90 days later on June 17, 2004. Because both of Hughes's appeal periods expired on the same date, we need not decide whether finality of the sentence, as opposed to finality of the conviction, is the touchstone for determining retroactive effect.

## II.

Hughes contends that his conviction and sentence were not final until the expiration of the 90–day appeal period and the 30–day good-cause extension available under Minn. R.Crim. P. 28.02, subd. 4(3). Thus, he argues that with the addition of the 30–day extension, his case was pending on direct review on the date *Blakely* was decided and therefore he was entitled to the benefit of *Blakely*. But Hughes did not raise this issue before the district court, the court of appeals, or in his petition for review to this court.

---

1. We note that our conclusion comports with the procedure outlined in Minn.Stat. § 611A.04, subd. 1(b)(1) (2006), which states, in part, that the court may amend or issue an order of restitution after a sentencing hearing if the offender has been committed to the Commissioner of Corrections. The legislature has provided a specific procedure for challenging the amount of a restitution award, stating that "[a]n offender may challenge restitution, but must do so by requesting a hearing within 30 days of receiving written notification of the amount of restitution requested, or within 30 days of sentencing, whichever is

later." Minn.Stat. § 611A.045, subd. 3(b) (2006). The language of this statute suggests that the legislature contemplated a distinction between sentence imposition and restitution determinations when it devised the statutory restitution scheme.

2. Pursuant to *Fields*, a defendant is permitted to challenge a durational departure imposed at sentencing but not executed, until his or her probation is revoked, by a simple motion made at the time of the revocation hearing. *Fields*, 416 N.W.2d at 736.

■ Generally, this court will not consider issues raised for the first time on appeal, even constitutional questions of criminal procedure. *See State v. Allen,* 706 N.W.2d 40, 43 (Minn.2005) (explaining that in rare cases this court will consider an issue for the first time on appeal when the interests of justice require and when doing so would not work an unfair surprise on a party). One of the purposes of this rule is to encourage the development of a factual basis for claims at the district court level. *State v. Gauster,* 752 N.W.2d 496, 508 (Minn.2008).

■ Hughes does not indicate why he failed to raise this issue below. Further, he provides no explanation of what good cause, if any, might excuse his failure to timely file an appeal and justify a 30–day extension for the filing of a notice of appeal. Finally, Hughes's new argument is in direct conflict with his affirmative concession in the court of appeals that if his sentence was imposed on March 19, 2004, then his right to direct review lapsed prior to the decision in *Blakely.*

Hughes next argues that we should conclude that under Minn. R.Crim. P. 29.04, subd. 6, he should not be required to raise an alternative argument in his petition for review that supports the decision of the postconviction court. Subdivision 6 allows a respondent, without filing a cross-appeal, to defend a decision or judgment on any grounds that would not expand the relief granted by the district court. *See also State v. Grunig,* 660 N.W.2d 134, 137 (Minn.2003) (involving a respondent who failed to raise an issue). But subdivision 6 expressly permits only the *respondent,* not the appellant, to offer an alternative argument not raised in a cross-appeal. Nothing in subdivision 6 extends the rule to benefit an appellant that files a *petition for review,* but fails to raise the argument in

the petition. Consequently, Minn. R.Crim. P. 29.04, subd. 6, does not apply.

In summary, Hughes failed to raise the 30–day good cause extension argument below, and he presents no reason why this court should consider an argument raised for the first time in his brief to this court. As a result, we decline to address this argument.

### III.

Finally, Hughes argues that his conviction was pending on direct review when *Blakely* was decided because he had the right to challenge his guilty plea on direct appeal from the restitution order of June 22, 2004. Essentially, Hughes contends that, because he had the right to seek withdrawal of his guilty plea, his case was pending on direct review until that issue was resolved. The State argues that any available review of that restitution order would have been collateral and that *Blakely* retroactivity does not extend to collateral review.

■ A defendant does not have an absolute right to withdraw a guilty plea once it is entered, *State v. Theis,* 742 N.W.2d 643, 646 (Minn.2007), but a defendant is allowed to withdraw a guilty plea "to correct a manifest injustice." Minn. R.Crim. P. 15.05, subd. 1. A manifest injustice exists where a guilty plea is invalid because it was not accurate, voluntary, and intelligent. *Theis,* 742 N.W.2d at 646. A motion to withdraw a guilty plea may be brought under Minn. R.Crim. P. 15.05, or in a petition for postconviction relief under Minn.Stat. § 590.01 (2006). A defendant who seeks to withdraw his guilty plea under Rule 15.05 after sentencing must bring the motion to withdraw in a petition for postconviction relief. *James v. State,* 699 N.W.2d 723, 727 (Minn.2005).

■ Because we conclude that Hughes's sentence was imposed on March 19, 2004, the time for him to file a direct appeal expired on June 17, 2004. After that date, the only means by which Hughes could seek withdrawal of his guilty plea would be through a postconviction petition.[3] But a postconviction petition seeks collateral review of the conviction and, therefore, does not justify *Blakely* retroactivity. *Perry v. State,* 731 N.W.2d 143, 147 (Minn.2007). Moreover, a motion to withdraw a guilty plea under the circumstances of this case would be discretionary with the postconviction court and would not provide an independent basis to extend the date on which Hughes's direct appeal period expires. Thus, the mere fact that Hughes was able to challenge his plea after the amount of restitution was announced on June 22, 2004, does not entitle him to the benefit of *Blakely.*

Affirmed.

**3.** Minn.Stat. § 611A.045 provides a separate process by which an offender can challenge the amount of restitution ordered. This process involves an evidentiary hearing administered by the district court. If Hughes wanted to challenge the amount of restitution ultimately ordered, without filing a petition for postconviction relief, he could do so under section 611A.045. Thus, our decision does not deny Hughes the opportunity for meaningful review of his restitution obligation, but simply establishes that the review available to him does not disturb the finality of either the conviction or sentence for retroactivity purposes.