**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A14-1296**


Shawn Michael O'Connell, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.


**Filed January 12, 2015**
**Affirmed**
**Bjorkman, Judge**


Hennepin County District Court
File No. 27-CR-11-34298

Cathryn Middlebrook, Chief Appellate Public Defender, Jennifer Lauermann, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Torrie J. Schneider, Assistant Bloomington City Attorney, Bloomington, Minnesota (for respondent)

Considered and decided by Connolly, Presiding Judge; Halbrooks, Judge; and Bjorkman, Judge.

## S Y L L A B U S

The rule announced in *Missouri v. McNeely*, 133 S. Ct 1552 (2013), that natural dissipation of alcohol in the blood does not constitute a per se exigency justifying a warrantless search, does not retroactively apply on collateral review of a final conviction.

# OPINION

**BJORKMAN**, Judge

Appellant challenges the denial of his petition for postconviction relief, arguing that the district court's refusal to suppress the urine-test results improperly compelled him to plead guilty. We affirm.

## FACTS

Early in the morning of June 28, 2011, Bloomington Police Officer Maria Mulvihill stopped appellant Shawn O'Connell after observing his vehicle weaving in traffic and traveling significantly under the speed limit. During the stop, Officer Mulvihill noticed that O'Connell's pupils were dilated and he answered questions slowly. Officer Mulvihill asked O'Connell to exit the vehicle to perform field sobriety tests, during which he struggled to walk and maintain his balance. A preliminary breath test revealed an alcohol concentration of .000, but Officer Mulvihill suspected that O'Connell was under the influence of a controlled substance.

Officer Mulvihill arrested O'Connell and transported him to the Bloomington Police Department. A drug-recognition exam indicated O'Connell was under the influence of a central-nervous-system stimulant. Officer Mulvihill read O'Connell the implied-consent advisory and he agreed to provide a urine sample. Testing revealed the presence of amphetamines.

Respondent State of Minnesota charged O'Connell with one count of driving while impaired (DWI). O'Connell moved to suppress the urine-test results and dismiss

the charge for lack of probable cause. The district court denied both motions. O'Connell subsequently pleaded guilty to the original charge.

In January 2014, O'Connell filed a petition for postconviction relief asking the district court to reverse his conviction, allow him to withdraw his guilty plea, and grant him a new trial. O'Connell argued that the district court's failure to suppress the urine-test results obtained without a warrant or voluntary consent compelled him to plead guilty. The district court denied O'Connell's petition. O'Connell appeals.

**ISSUE**

Did the district court err by declining to retroactively apply the new rule announced in *McNeely* to O'Connell's conviction?

**ANALYSIS**

This court reviews the denial of a postconviction petition for an abuse of discretion. *Francis v. State*, 781 N.W.2d 892, 896 (Minn. 2010). A defendant does not have an absolute right to withdraw a guilty plea. *State v. Theis*, 742 N.W.2d 643, 646 (Minn. 2007). After sentencing, a defendant is entitled to withdraw a guilty plea if "withdrawal is necessary to correct a manifest injustice." Minn. R. Crim. P. 15.05, subd. 1. A manifest injustice exists if the plea was not accurate, voluntary, and intelligent. *Theis*, 742 N.W.2d at 646. The validity of a guilty plea is a question of law that we review de novo. *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010).

O'Connell contends that his plea was not voluntary because the district court's refusal to suppress urine-test results obtained without a warrant improperly compelled him to plead guilty. O'Connell's challenge to the district court's suppression order is

3

based on the rule announced in *McNeely*, that dissipation of alcohol in the blood does not constitute a per se exigency justifying a warrantless search. 133 S. Ct. 1552, 1563 (2013).

To determine whether O'Connell is entitled to the benefit of the rule announced in *McNeely*, we first consider whether his conviction was final when *McNeely* was decided. *See Campos v. State*, 816 N.W.2d 480, 488 (Minn. 2012) (recognizing finality of conviction as threshold issue for retroactivity analysis). A case is final when "the availability of appeal has been exhausted, the time for a petition for certiorari has elapsed or a petition for certiorari with the Supreme Court has been filed and finally denied." *O'Meara v. State*, 679 N.W.2d 334, 339 (Minn. 2004), *overruled on other grounds by Danforth v. Minnesota*, 552 U.S. 264, 128 S. Ct. 1029 (2008). O'Connell pleaded guilty on May 30, 2012. He did not file a direct appeal so his case was final on August 29, 2012. The United States Supreme Court decided *McNeely* on April 17, 2013.

O'Connell argues his case was still pending when *McNeely* was decided because the two-year period for seeking postconviction relief had not expired. We disagree. Our supreme court rejected this contention in *State v. Hughes*, noting that a postconviction petition seeks collateral review of a conviction, and a motion to withdraw a guilty plea does not extend the direct appeal period because withdrawal is "discretionary with the postconviction court." 758 N.W.2d 577, 583 (Minn. 2008). Accordingly, we consider whether *McNeely* applies retroactively.

Minnesota courts follow the retroactivity analysis outlined in *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060 (1989), when considering whether a rule applies to a final

4

conviction. *See Danforth v. State*, 761 N.W.2d 493, 499 (Minn. 2009). Under *Teague*, we first determine whether the rule is new. 489 U.S. at 310, 109 S. Ct. at 1075. If so, the rule does not apply unless it falls under an established exception to the general principle that new rules do not have retroactive effect. *Id.* at 310-12, 109 S. Ct. at 1075-76. Whether a decision applies retroactively is a legal question that we review de novo. *O'Meara*, 679 N.W.2d at 338.

## I.    *McNeely* **established a new rule of law.**

Both parties proceed under the assumption that *McNeely* announced a new rule of law. The United States Supreme Court did not definitively so state, and Minnesota courts have not addressed this issue. But the law supports this interpretation. A case announces a new rule if the result was not "'*dictated*' by precedent existing at the time the defendant's conviction became final." *State v. Petschl*, 692 N.W.2d 463, 471 (Minn. App. 2004), *review denied* (Minn. Jan. 20, 2005). Likewise, a case announces a new rule if "it breaks new ground or imposes a new obligation on the government." *Chaidez v. United States*, 133 S. Ct. 1103, 1107 (2013) (quotations omitted). In the alternative, a case restates an old rule when it is "merely an application of the principle that governed a prior decision to a different set of facts." *Id.* (quotation omitted).

Prior to *McNeely*, many jurisdictions, including Minnesota, recognized that the natural dissipation of alcohol in the blood constituted a per se exigency justifying a warrantless search. *McNeely*, 133 S. Ct. at 1558 n.2 (citing *State v. Shriner*, 751 N.W.2d 538, 545 (Minn. 2008)). *McNeely* changed the law in these jurisdictions. Law enforcement can no longer rely on natural dissipation alone to create an exigent

5

circumstance. *McNeely*, 133 S. Ct. at 1563. Rather, law enforcement is now obligated to obtain a warrant or establish a valid exception to the warrant requirement based on the totality of the circumstances. *Id.* And the split in authority prior to *McNeely* demonstrates its holding was not dictated by existing precedent. *See id.* at 1558 (explaining that the court granted certiorari "to resolve a split of authority"). We conclude that *McNeely* announced a new rule that would generally not apply to final convictions on collateral review.

**II.  *McNeely* is not a watershed rule of criminal procedure.**

A new rule applies retroactively to final convictions only if (1) the rule places an entire category of conduct beyond the reach of the criminal law or (2) the new rule is a watershed rule of criminal procedure that implicates the fundamental fairness of the criminal proceeding. *Teague*, 489 U.S. at 311-12, 109 S. Ct. at 1075-76.

The rule announced by *McNeely* is clearly procedural as it modified the process law enforcement must follow before administering a blood, breath, or urine test. *Schriro v. Summerlin*, 542 U.S. 348, 353, 124 S. Ct. 2519, 2523 (2004) (defining procedural rules as those that regulate only the manner of determining guilt). As such, *McNeely* only applies retroactively if it is a watershed rule. *Campos*, 816 N.W.2d at 497 (stating only the watershed-rule exception applies to new procedural rules). A watershed rule "must both be necessary to prevent an impermissibly large risk of an inaccurate conviction and alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding." *Id.* at 498 (quotation omitted). This exception is extremely narrow because applying a new rule to a final conviction "seriously undermines the principle of finality

6

which is essential to the operation of our criminal justice system." *Teague*, 489 U.S. at 309, 109 S. Ct. at 1074. Since *Teague*, the United States Supreme Court has identified only one rule that meets this standard—the rule announced in *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792 (1963), that counsel must be appointed for any indigent defendant charged with a felony. *Whorton v. Bockting*, 549 U.S. 406, 419, 127 S. Ct. 1173, 1182 (2007).

Minnesota courts have also uniformly declined to recognize new rules of criminal procedure as watershed rules. *See, e.g.*, *Campos*, 816 N.W.2d at 498-99 (concluding *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473 (2010), did not announce a watershed rule because its "new interpretation of the right to effective assistance of counsel does not qualify as a rule that goes to the heart of a fair proceeding"); *Danforth v. State*, 718 N.W.2d 451, 460 (Minn. 2006) (holding that *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354 (2004), did not announce a watershed rule), *rev'd on other grounds*, 552 U.S. 264, 128 S. Ct. 1029 (2008); *State v. Houston*, 702 N.W.2d 268, 273 (Minn. 2005) (determining that *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004), was not a watershed rule because it did not "impact the accuracy of an underlying determination of guilt or innocence," but instead only "modifie[d] the manner in which certain factors . . . justifying upward departures . . . must be treated").

Based on the watershed-rule exception's narrow scope and the nature of the rule announced by *McNeely*, we conclude that retroactive application is not warranted. The requirement that law enforcement secure a warrant, or establish an exception to the warrant requirement, before administering a breath, blood, or urine test has little bearing

7

on the accuracy of the underlying determination of guilt. Rather, it merely addresses the procedural requirements law enforcement must follow when gathering evidence against a suspect. And *McNeely* does not address matters that go to the heart of a fair proceeding, as the rule only applies to a limited class of cases (DWIs) and "does not have a fundamental and profound impact on criminal proceedings generally." *See Campos*, 816 N.W.2d at 499.

On this record, we conclude that O'Connell is not entitled to the benefit of *McNeely* and the district court did not abuse its discretion when it denied O'Connell's postconviction petition.[1]

## DECISION

Because the rule announced in *McNeely* is not a watershed rule, it does not retroactively apply on collateral review of O'Connell's conviction.

**Affirmed.**

---

[1] Because we conclude that *McNeely* does not apply retroactively to O'Connell's case, we need not examine the district court's alternative ruling that O'Connell consented to the urine test.