Wesley Eugene BROOKS,
petitioner, Appellant,

v.

STATE of Minnesota, Respondent.

A16-1630
A16-1713

Court of Appeals of Minnesota.

Filed May 15, 2017

Charles L. Hawkins, Arthur J. Waldon, Minneapolis, Minnesota (for appellant).

Lori Swanson, Attorney General, St. Paul, Minnesota; and Michael O. Freeman, Hennepin County Attorney, Brittany D. Lawonn, Assistant County Attorney, Minneapolis, Minnesota; and Ronald Hocevar, Scott County Attorney, Todd P. Zettler, Assistant County Attorney, Shakopee, Minnesota (for respondent).

Considered and decided by Reyes, Presiding Judge; Connolly, Judge; and Larkin, Judge.

## OPINION

LARKIN, Judge

Appellant challenges decisions of postconviction courts in Scott and Hennepin Counties, which summarily denied his requests for relief from three driving-while-impaired convictions. Appellant argues that the postconviction courts erred by refusing to retroactively apply *Birchfield,* 136 S.Ct. at 2160, *Thompson,* 886 N.W.2d at 224, and *Trahan,* 886 N.W.2d at 216,[1]

and by denying his ineffective-assistance-of-counsel claims. We conclude that the rules announced in *Birchfield, Thompson,* and *Trahan* regarding the search-incident-to-arrest exception to the Fourth Amendment's warrant requirement are new rules of federal constitutional criminal procedure that do not apply retroactively on collateral review of appellant's final convictions. And because the record conclusively shows that appellant is not entitled to relief on his ineffective-assistance-of-counsel claims, we affirm.

## FACTS

These appeals stem from appellant Wesley Eugene Brooks's three convictions of first-degree driving while impaired (DWI). A detailed factual history of the convictions is set forth in *State v. Brooks,* 838 N.W.2d 563, 565-66 (Minn. 2013). The facts relevant to these appeals follow.

On July 31, 2009, Brooks was arrested for DWI in Scott County. An officer read Brooks Minnesota's implied-consent advisory, which informed him, in part, that refusing to take a chemical test is a crime. Brooks agreed to provide a urine sample, which revealed an alcohol concentration of 0.14.

On January 16, 2010, Brooks was arrested for DWI in Hennepin County. An officer read Brooks Minnesota's implied-consent advisory, and he agreed to provide a blood sample. The sample revealed an alcohol concentration of 0.16.

On January 25, 2010, Brooks was arrested for DWI in Scott County. An officer read Brooks Minnesota's implied-consent

<hr />

1. In the postconviction proceedings, as well as his brief to this court, Brooks relied on this court's decisions in *State v. Thompson,* 873 N.W.2d 873 (Minn. App. 2015), *aff'd on other grounds,* 886 N.W.2d 224 (Minn. 2016), *cert. denied,* — U.S. —, 137 S.Ct. 1338, 197 L.Ed.2d 520 (2017), and *State v. Trahan,* 870

N.W.2d 396 (Minn. App. 2015), *aff'd on other grounds,* 886 N.W.2d 216 (Minn. 2016). Because the Minnesota Supreme Court affirmed this court's decisions in *Thompson* and *Trahan,* we cite the supreme court's decisions in our analysis. *See Thompson,* 886 N.W.2d at 234; *Trahan,* 886 N.W.2d at 224.

advisory, and he agreed to provide a urine sample. The sample revealed an alcohol concentration of 0.16.

The state charged Brooks with two counts of first-degree DWI based on each test result. Brooks moved to suppress the results of the tests because the police obtained the blood and urine samples without a warrant. The Scott County District Court denied Brooks's motion to suppress the urine tests, concluding that the underlying warrantless searches were reasonable under the exigent-circumstances exception to the Fourth Amendment's warrant requirement, based on the natural dissipation of alcohol. The Hennepin County District Court denied Brooks's motion to suppress the blood-test result, concluding that Brooks consented to the test. Brooks waived his right to a jury trial in each case, and the cases proceeded to trial on stipulated facts. Brooks was convicted of one count of first-degree DWI in each case.

Brooks appealed,[2] and this court affirmed his convictions, reasoning that the natural dissipation of alcohol constituted an exigent circumstance and that the warrantless searches were therefore reasonable under the exigent-circumstances exception to the warrant requirement. *State v. Brooks*, No. A11-1043, 2012 WL 1914073, at *2 (Minn. App. May 29, 2012) (Hennepin County case), *vacated*, —— U.S. ——, 133 S.Ct. 1996, —— L.Ed.2d —— (2013), *aff'd on other grounds*, 838 N.W.2d 563 (Minn. 2013); *Brooks*, 2012 WL 1570064, at *3 (Scott County cases).

The Minnesota Supreme Court denied Brooks's petitions for further review. *Brooks*, 838 N.W.2d at 567. The United States Supreme Court granted certiorari review, vacated the judgments of conviction, and remanded the cases to this court for further consideration in light of *Missouri v. McNeely*, which held that the natural dissipation of alcohol in the blood does not constitute a per se exigency justifying a warrantless search. *Brooks v. Minnesota*, —— U.S. ——, 133 S.Ct. 1996, —— L.Ed.2d —— (2013); *Missouri v. McNeely*, 569 U.S. 141, 133 S.Ct. 1552, 1556, 185 L.Ed.2d 696 (2013).

This court reinstated Brooks's appeals. *Brooks*, 838 N.W.2d at 567. The Minnesota Supreme Court granted the state's petitions for accelerated review, concluded that the warrantless searches were reasonable under the consent exception to the warrant requirement, and affirmed Brooks's convictions. *Id.* at 567, 572-73.

Brooks petitioned for postconviction relief in Scott and Hennepin counties. Brooks asserted, in part, that his consent to chemical testing was involuntary because it was based on misleading and inaccurate implied-consent advisories. He relied on *Birchfield*, 136 S.Ct. at 2160, and this court's decisions in *Thompson*, 873 N.W.2d at 873, and *Trahan*, 870 N.W.2d at 396. He also asserted that he received ineffective assistance from his trial and appellate attorneys.

The postconviction courts denied relief. The Scott County postconviction court ruled that, with the exception of Brooks's claim of ineffective assistance of appellate counsel, all of his claims were procedurally barred under *State v. Knaffla*, 309 Minn. 246, 243 N.W.2d 737 (1976). The postconviction court also ruled that "[e]ven if [Brooks's] claims were not barred by *Knaffla*, they lack merit." In so ruling, the court concluded that this court's decision

---

**2.** The Scott County cases were consolidated. *State v. Brooks*, No. A11-1042, 2012 WL 1570064, at *1 (Minn. App. May 7, 2012), *vacated*, —— U.S. ——, 133 S.Ct. 1996, —— L.Ed.2d —— (2013), *aff'd on other grounds*, 838 N.W.2d 563 (Minn. 2013).

in *Thompson* did not apply retroactively to Brooks's convictions.

The Hennepin County postconviction court similarly ruled that Brooks's "claims, other than ineffective assistance of appellate counsel, are barred under *Knaffla*" and that his "claims fail on the merits." In so ruling, the court concluded that *Birchfield*, as well as this court's decisions in *Thompson* and *Trahan*, "do not apply retroactively to a conviction that, like [Brooks's], was final before the cases were decided."

Brooks appeals, challenging the decisions of the postconviction courts.

## ISSUES

I.   Did the postconviction courts err by refusing to retroactively apply *Birchfield*, *Thompson*, and *Trahan* to Brooks's convictions?

II.  Did the postconviction courts err by summarily denying Brooks's claims of ineffective assistance of trial counsel?

III. Did the postconviction courts err by summarily denying Brooks's claims of ineffective assistance of appellate counsel?

## ANALYSIS

▬▬ Appellate courts review the denial of postconviction relief without an evidentiary hearing for an abuse of discretion. *State v. Nicks*, 831 N.W.2d 493, 503 (Minn. 2013). In doing so, we review the postconviction court's legal determinations de novo and its factual findings for clear error. *Bonga v. State*, 797 N.W.2d 712, 718 (Minn. 2011). When a petition for postconviction relief follows a direct appeal of a conviction, all claims raised in the direct appeal and all claims that the defendant knew or should have known of at the time of the direct appeal are procedurally barred. *Knaffla*, 309 Minn. at 252, 243 N.W.2d at 741; *see also Leake v. State*, 737 N.W.2d 531, 535 (Minn. 2007).

## I.

Brooks contends that the postconviction courts "erred in concluding [that *Birchfield*, *Thompson*, and *Trahan*] do not apply retroactively to [his] claim that the [Minnesota implied-consent advisory] produced nothing more than coerced consent to his blood alcohol tests." Brooks argues that these "cases have clarified DWI law, holding a state cannot criminalize an individual's refusal to submit to a warrantless search of his blood or urine, and [that] such cases must be applied retroactively to [his] case." More specifically, he argues that the cases "would have had a drastic impact on [his] appeal, [because] the law now bolsters [his] initial assertion that his blood alcohol tests were coerced." He concludes that the cases "render the warrantless searches of his blood and urine illegal."

Whether *Birchfield*, *Thompson*, and *Trahan* apply retroactively to Brooks's convictions is a legal question that we review de novo. *See O'Meara v. State*, 679 N.W.2d 334, 338 (Minn. 2004), *overruled on other grounds by Danforth v. Minnesota*, 552 U.S. 264, 128 S.Ct. 1029, 169 L.Ed.2d 859 (2008). It is also a question of first impression.

As is relevant here, *Birchfield*, *Thompson*, and *Trahan* announced rules regarding application of the search-incident-to-arrest exception to the Fourth Amendment's warrant requirement in the context of chemical testing in DWI cases. In *Birchfield*, the United States Supreme Court held that the Fourth Amendment permits a warrantless breath test, but not a warrantless blood test, incident to a lawful arrest for DWI. 136 S.Ct. at 2185. The Supreme Court also held that a criminal

test-refusal charge based on what would have been an unconstitutional search violates the Fourth Amendment. *Id.* at 2186.

In *Thompson*, the Minnesota Supreme Court applied *Birchfield* and held that "a warrantless urine test does not fall within the search-incident-to-arrest exception to the Fourth Amendment's warrant requirement" and that a criminal test-refusal charge based on what would have been an unconstitutional search violates the Fourth Amendment. 886 N.W.2d at 226. In *Trahan*, the Minnesota Supreme Court applied *Birchfield* and held that a warrantless blood test does not fall within the search-incident-to-arrest exception to the Fourth Amendment's warrant requirement and that a criminal test-refusal charge based on what would have been an unconstitutional search violates the Fourth Amendment. 886 N.W.2d at 220-21, 224.

*Birchfield* was a consolidated appeal, involving three petitioners. 136 S.Ct. at 2170-72. Petitioner Bernard was charged with test refusal based on his refusal to submit to a warrantless breath test after his arrest for DWI. *Id.* at 2171. Because the search would have been constitutional under the search-incident-to-arrest exception to the warrant requirement, the Supreme Court held that his test-refusal charge did not violate the Fourth Amendment. *Id.* at 2186. Petitioner Birchfield was convicted of test refusal based on his refusal to submit to a warrantless blood test after his arrest for DWI. *Id.* at 2170-71. Because the search would have been unconstitutional, the Supreme Court held that his test-refusal conviction violated the Fourth Amendment.[3] *Id.* at 2186.

The third petitioner in *Birchfield*, Beylund, did not refuse a chemical test, and he was not charged with test refusal. *Id.* at 2172. Instead, Beylund "submitted to a blood test after police told him that the law required his submission, and his license was then suspended and he was fined in an administrative proceeding." *Id.* at 2186. The United States Supreme Court remanded Beylund's case, reasoning that

> [t]he North Dakota Supreme Court held that Beylund's consent was voluntary on the erroneous assumption that the State could permissibly compel both blood and breath tests. Because voluntariness of consent to a search must be determined from the totality of all the circumstances, we leave it to the state court on remand to reevaluate Beylund's consent given the partial inaccuracy of the officer's advisory.

*Id.* (citation and quotation omitted).

Brooks is similarly situated to petitioner Beylund, because he consented to chemical testing and the Minnesota Supreme Court determined that his consent was valid. *Compare Brooks*, 838 N.W.2d at 572, *with Birchfield*, 136 S.Ct. at 2172. Thus, Brooks argues that if *Birchfield*, *Thompson*, and *Trahan* apply retroactively to his convictions, the cases require reevaluation of the Minnesota Supreme Court's determination regarding the validity of his consent. We consider Brooks's argument for retroactive application of *Birchfield*, *Thompson*, and *Trahan* in this limited context, that is, a request for reevaluation of a prior judicial determination that consent to chemical testing was voluntary.

---

**3.** Defendants Thompson and Trahan were similarly convicted of test refusal based on their refusals to submit to warrantless chemical testing after they were arrested for DWI. *Thompson*, 886 N.W.2d at 227 (refusal of blood and urine tests); *Trahan*, 886 N.W.2d at 219-20 (refusal of blood test). Because the searches would have been unconstitutional, the Minnesota Supreme Court reversed each defendant's conviction based on the Fourth Amendment. *Thompson*, 886 N.W.2d at 233-34; *Trahan*, 886 N.W.2d at 224.

■ In deciding whether to retroactively apply a new rule of federal constitutional criminal procedure to cases decided before the rule's announcement, Minnesota courts apply the standard established in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). *Danforth v. State*, 761 N.W.2d 493, 494 (Minn. 2009). Under *Teague*, "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced" unless they fall within one of the two following exceptions to the general rule. 489 U.S. at 310-11, 109 S.Ct. at 1075-76. First, "a new rule should be applied retroactively if it places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." *Id.* at 311, 109 S.Ct. at 1075 (quotation omitted). Second, "watershed rules of criminal procedure" apply retroactively. *Id.* at 311, 109 S.Ct. at 1076.

Brooks does not dispute that the *Birchfield, Thompson*, and *Trahan* search-incident-to-arrest rules are rules of federal constitutional criminal procedure. *See O'Connell v. State*, 858 N.W.2d 161, 166 (Minn. App. 2015) (concluding that a rule was "clearly procedural as it modified the process law enforcement must follow before administering a blood, breath, or urine test"), *review granted* (Minn. Mar. 25, 2015) *and order granting review vacated* (Minn. Oct. 20, 2015). And Brooks concedes that his convictions were final before the announcement of these rules. *See Hutchinson v. State*, 679 N.W.2d 160, 162 (Minn. 2004) (stating that a case is "final, for purposes of retroactivity," when "a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or finally denied" (quotations omitted)). However, Brooks contends that *Birchfield, Thompson*, and *Trahan* apply retroactively to his convictions because the decisions did not announce new rules of law.

The *Teague* court provided the following instruction for determining whether a case announced a new rule:

It is admittedly often difficult to determine when a case announces a new rule, and we do not attempt to define the spectrum of what may or may not constitute a new rule for retroactivity purposes. In general, however, a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government. To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final.

489 U.S. at 301, 109 S.Ct. at 1070 (citations omitted).

Brooks argues that the Supreme Court's "holding in *Birchfield* is nothing more than another logical result dictated by precedent" and that because "*Birchfield* merely clarified and restated existing Fourth Amendment law, its holding is applicable to [his convictions]."

In *Birchfield*, the United States Supreme Court acknowledged that the search-incident-to-arrest exception to the warrant requirement is long-standing. However, the Court indicated that it was breaking new ground regarding that exception:

[T]he founding era does not provide any definitive guidance as to whether [blood and breath tests to measure alcohol concentration] should be allowed incident to arrest. Lacking such guidance, ... we examine the degree to which they intrude upon an individual's privacy and the degree to which they are needed for the promotion of legitimate governmental interests.

136 S.Ct. at 2174-76 (quotation and footnote omitted). This language indicates that the Court's decision was not dictated by precedent and suggests that the Court set forth new rules regarding the search-incident-to-arrest exception.

Moreover, although this court has not addressed the potential retroactivity of the search-incident-to-arrest rules announced in *Birchfield*, we have held that the rule announced in *McNeely* regarding the exigent-circumstances exception to the Fourth Amendment's warrant requirement "does not retroactively apply on collateral review of a final conviction." *O'Connell*, 858 N.W.2d at 163. This court concluded that *McNeely* established a new rule because it changed the law such that "[l]aw enforcement can no longer rely on natural dissipation alone to create an exigent circumstance. Rather, law enforcement is now obligated to obtain a warrant or establish a valid exception to the warrant requirement based on the totality of the circumstances." *Id.* at 165-66 (citation omitted). *Birchfield*, *Thompson*, and *Trahan* similarly established—for the first time—that law enforcement cannot rely on the search-incident-to-arrest exception to obtain a warrantless blood or urine sample from a suspect lawfully arrested for DWI.

■ Based on the Supreme Court's statement in *Birchfield* that definitive guidance was lacking and this court's treatment of the *McNeely* rule as new, we conclude that *Birchfield*, *Thompson*, and *Trahan* announced new rules of federal constitutional criminal procedure that do not apply retroactively on collateral review of a final conviction unless one of the *Teague* exceptions applies.

Brooks does not argue that either of the *Teague* exceptions applies here. In fact, he concedes that they do not apply, and he bases his request for retroactive application of *Birchfield*, *Thompson*, and *Trahan*

solely on his argument that the cases did not announce new rules. Because Brooks does not argue that either of the *Teague* exceptions applies, we do not consider their application in this case.

In sum, the rules announced in *Birchfield*, *Thompson*, and *Trahan* regarding the search-incident-to-arrest exception to the Fourth Amendment's warrant requirement are new rules of federal constitutional criminal procedure that do not apply retroactively on collateral review of a final conviction unless one of the *Teague* exceptions applies. Brooks does not argue that either *Teague* exception applies here. We therefore hold that the postconviction courts did not err by denying Brooks's requests for postconviction relief under *Birchfield*, *Thompson*, and *Trahan*. Because the postconviction courts correctly denied relief on this ground, we do not review the courts' rulings that the claims are procedurally barred under *Knaffla*.

## II.

Brooks contends that the postconviction courts erred by denying his claims of ineffective assistance of trial counsel without an evidentiary hearing. Brooks asserts that his "[t]rial counsel's failure to obtain ... independent blood alcohol test[s] and failure to object to the deficient waiver[s] of [his] right to testify demonstrates ineffective assistance of trial counsel." Although Brooks asserts that his trial attorneys were ineffective for two reasons, his argument focuses on his attorneys' failure to obtain independent blood-alcohol tests. He does not address his attorneys' failure to object to his allegedly deficient waivers.

■ An assignment of error based on mere assertion and not supported by legal authority or argument is waived unless prejudicial error is obvious on mere inspection. *State v. Wembley*, 712 N.W.2d

783, 795 (Minn. App. 2006), *aff'd on other grounds*, 728 N.W.2d 243 (Minn. 2007). Moreover, issues not adequately briefed are waived. *State v. Butcher*, 563 N.W.2d 776, 780 (Minn. App. 1997), *review denied* (Minn. Aug. 5, 1997). Because Brooks does not provide any legal argument in support of his assertion that his trial attorneys were ineffective for failing to challenge his waivers and prejudicial error is not obvious on mere inspection, we limit our review to Brooks's assertion that his trial attorneys were ineffective for failing to obtain independent blood-alcohol tests.

■■■ A postconviction court is required to hold a hearing on a petition "[u]nless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." Minn. Stat. § 590.04, subd. 1 (2014); *Leake*, 737 N.W.2d at 535. An evidentiary hearing is unnecessary if the petitioner fails to allege facts that are sufficient to entitle him to the relief requested. *Davis v. State*, 784 N.W.2d 387, 392 (Minn. 2010). This court "must consider [the petitioner's] allegations in the light most favorable to him, and also consider the files and records of the proceeding, including the State's arguments." *Nicks*, 831 N.W.2d at 505-06 (quotation omitted). However, allegations in a postconviction petition must be "more than argumentative assertions without factual support." *Hodgson v. State*, 540 N.W.2d 515, 517 (Minn. 1995) (quotation omitted).

■■■ A determination whether a defendant received ineffective assistance of counsel involves a mixed question of law and fact that is reviewed de novo. *Dereje v. State*, 837 N.W.2d 714, 721 (Minn. 2013). We generally analyze ineffective-assistance-of-counsel claims as trial errors under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Id.* To prevail under *Strickland*, a petition-

er "must show that counsel's representation fell below an objective standard of reasonableness" and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 687-88, 694, 104 S.Ct. at 2064, 2068; *see also State v. Rhodes*, 657 N.W.2d 823, 842 (Minn. 2003) (applying *Strickland* to a claim for ineffective assistance of counsel).

■■■ Appellate courts apply "a strong presumption that [an attorney's] performance falls within the wide range of 'reasonable professional assistance.'" *State v. Jones*, 392 N.W.2d 224, 236 (Minn. 1986) (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065). A reviewing court generally "will not review attacks on counsel's trial strategy." *Opsahl v. State*, 677 N.W.2d 414, 421 (Minn. 2004); *see also Ives v. State*, 655 N.W.2d 633, 636 (Minn. 2003) (stating that matters of trial strategy "will not be reviewed later by an appellate court as long as the trial strategy was reasonable"). "The extent of counsel's investigation is considered a part of trial strategy." *Opsahl*, 677 N.W.2d at 421. "It is within trial counsel's discretion to forgo investigation of leads not reasonably likely to produce favorable evidence." *Gustafson v. State*, 477 N.W.2d 709, 713 (Minn. 1991).

■■■ Brooks asserts that "there is no doubt trial counsel's failure to request ... independent test[s] of [his] blood and urine was deficient" and that the failure "left potentially exculpatory evidence unchecked." But Brooks has not provided factual support for these argumentative assertions. Moreover, Brooks's chemical tests showed that his alcohol concentrations in the underlying cases were 0.14, 0.16, and 0.16, well over the legal limit of 0.08. *Brooks*, 838 N.W.2d at 565-66; *see* Minn. Stat. § 169A.20, subd. 1 (Supp. 2009) (providing that it is a crime for any

person to drive a motor vehicle when "the person's alcohol concentration ... is 0.08 or more"). Brooks does not explain why his trial attorneys had any reason to doubt the accuracy of his test results or to reasonably believe that independent tests would produce favorable evidence. Given that the test results showed alcohol concentrations at or near twice the legal limit, we do not discern a reason to ignore the strong presumption that Brooks's trial attorneys provided reasonable professional assistance.

In sum, Brooks did not allege facts sufficient to show that his attorneys' decisions to forgo independent testing were anything other than unreviewable, investigative strategy. The record therefore conclusively shows that Brooks is not entitled to relief on his claims of ineffective assistance of trial counsel, and the postconviction courts did not err by denying these claims without a hearing.

### III.

Brooks contends that the postconviction courts erred by denying his claims of ineffective assistance of appellate counsel. Brooks argues that his "[a]ppellate counsel's failure to raise the glaring ineffectiveness of trial counsel demonstrates ineffective assistance of appellate counsel."

■■■■ Appellate counsel "is not required to raise claims on direct appeal that appellate counsel legitimately concluded would not prevail." *Williams v. State*, 764 N.W.2d 21, 32 (Minn. 2009). And "lawyers representing appellants should be encouraged to limit their contentions on appeal at least to those which may be legitimately regarded as debatable." *Dobbins v. State*, 788 N.W.2d 719, 729 (Minn. 2010) (quotation omitted). Moreover, to prevail on a claim of ineffective assistance of appellate counsel based on appellate counsel's failure to raise ineffective assistance of trial counsel, the appellant must show that trial counsel was ineffective. *Fields v. State*, 733 N.W.2d 465, 468 (Minn. 2007). If appellant's "trial counsel was effective, then his appellate counsel could not have been ineffective for failing to raise ineffective assistance of trial counsel." *McDonough v. State*, 675 N.W.2d 53, 56 n.4 (Minn. 2004).

■■■■ Because Brooks did not allege facts sufficient to show that his trial attorneys were ineffective, the record conclusively shows that Brooks is not entitled to relief on his claims of ineffective assistance of appellate counsel. The postconviction courts therefore did not err by denying these claims without a hearing.

### DECISION

Because the search-incident-to-arrest rules announced in *Birchfield, Thompson,* and *Trahan* are new rules of federal constitutional criminal procedure and Brooks does not contend that either of the *Teague* exceptions applies, the postconviction courts did not err by refusing to retroactively apply *Birchfield, Thompson,* and *Trahan* on collateral review of Brooks's final convictions. And because the record conclusively shows that Brooks is not entitled to relief on his ineffective-assistance-of-counsel claims, the postconviction courts did not err by summarily denying these claims.

**Affirmed.**